IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

AMERICAS PREMIERE CORPORATION

:

v.                              : Civil Action No. DKC 2008-3304

:

KENNETH D. SCHWARZ, et al.

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this fraud in the inducement action is a motion to dismiss filed by Defendants Kenneth D. Schwarz and Andrew B. Zeinfeld (Paper 8). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be denied.

**I. Background**

Plaintiff Americas Premiere Corporation ("APC") was a Maryland corporation that formerly sold new mobile telephones, as well as repaired and refurbished used mobile telephones. InPhonic, Inc. was once a leading online seller of wireless services and products to consumers nationwide, but has since filed for bankruptcy and is no longer in business. Defendant Kenneth D. Schwartz is the former Executive Vice-President and Chief Financial Officer of InPhonic. Defendant Andrew B. Zeinfeld is the former President and Chief Executive Officer of InPhonic.

Plaintiff alleges that, between 2005 and 2007, it was the exclusive repair and refurbishing center for the mobile telephones that InPhonic's customers had returned to InPhonic due to various defects.  Plaintiff refurbished and repackaged over 500,000 mobile telephones for InPhonic during this period.  In addition, InPhonic purchased between 10,000 and 17,000 new mobile telephones from Plaintiff during this period.

InPhonic's financial condition began to deteriorate in 2007. On September 7, 2007, Defendant Zeinfeld allegedly requested a meeting with Paul Greene, President of APC.  At the meeting, Defendants Zeinfeld and Schwarz requested Mr. Greene to procure 10,000 "Motorola Krazer-1" mobile telephones, and insisted that they needed them delivered within a week.  Defendants allegedly agreed to pay Plaintiff by a wire transfer of funds immediately upon delivery of the mobile telephones.  Mr. Greene agreed to procure and deliver the telephones as requested.  Defendant Zeinfeld allegedly called Mr. Greene several times over the following week to inquire on the status of Mr. Greene's efforts to obtain the telephones.

On September 14, 2007, Plaintiff delivered 10,000 new Motorola Krazer-1 telephones to InPhonic at its Technology and Operations Center in Largo, Maryland.  The same day, Plaintiff tendered an invoice to InPhonic for $2,040,000, which was inconsistent with the purchase price that Defendants Zeinfeld and Schwarz approved.

InPhonic never paid Plaintiff for the telephones.  Mr. Greene attempted to contact Defendants Zeinfeld and Schwarz several times to inquire about payment, but Defendants allegedly refused to accept Mr. Greene's calls.  On October 10, 2007, Plaintiff demanded the immediate return of the inventory.  InPhonic did not return the inventory and allegedly began giving away the telephones for free through its website, www.wirefly.com.  Due to InPhonic's failure to pay Plaintiff for the inventory, Plaintiff was unable to remain in business and has since ceased operations.

On December 12, 2008, Plaintiff filed a complaint in this court on the basis of diversity jurisdiction, asserting a a single count of fraud in the inducement against Defendants, seeking $10 million in compensatory damages and $25 million in exemplary damages.  (Paper 1).  Defendants filed a motion to dismiss on February 20, 2009.  (Paper 8).

## II.  Standards of Review

### A.  12(b)(6)

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."    Fed.R.Civ.P.  8(a)(2).

3

Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not "show[n]"–"that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining

4

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B. Rule 9(b)

Because Plaintiff alleges that Defendants engaged in fraud, Plaintiff's claims are subject to the heightened pleading standard under Fed.R.Civ.P. 9(b). *Harrison*, 176 F.3d at 783-84. Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The purpose of Rule 9(b) is to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation. *Harrison*, 176 F.3d, at 784. In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.*

## III.  Analysis

Defendants contend that Plaintiff's complaint should be dismissed for two reasons: (1) Plaintiff has not stated a claim for fraud with particularity, as required under Fed.R.Civ.P. 9(b); and (2) Plaintiff fails to state a claim upon which relief can be granted.

### A.  Pleading With Particularity

Defendants contend that Plaintiff's complaint is not pled with particularity because it does not provide sufficient information about the alleged misrepresentations that Defendants made.  For example, Defendants take issue with one of Plaintiff's allegations in the complaint:

> APC now knows, from disclosures made by former employees of InPhonic, that Zeinfeld and Schwarz, from the very outset, never intended to pay APC for the APC inventory.

(Paper 1, ¶ 18).  Defendants insist that this allegation is vague because Plaintiff fails to allege who made the disclosures, when the disclosures were made, or otherwise provide information that would enable Defendants to formulate a defense to this allegation.

Plaintiff counters that there can be no serious question that its complaint is pled with ample particularity.  Plaintiff points out that the complaint states the exact date of the meeting at which Defendants made the false representations, September 7, 2007. Paragraphs 14 and 27 of the complaint also allege that Defendants stated at this meeting that the phones needed to be delivered

within a week, and that Plaintiff would be paid by wire transfer of funds immediately upon delivery of the phones. Plaintiff also points out that paragraph 19 of the complaint provides that, based on Defendants' promise of payment, Plaintiff delivered the phones to InPhonic's warehouse on September 14, 2007.

The "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 783-84. Here, Plaintiff has provided the time, contents of the misrepresentation, and the individuals who made the misrepresentations and what they obtained. Plaintiff does not allege the place where the misrepresentations were made, except to state that it was at a "meeting." The absence of more detail is not a fatal flaw justifying dismissal. Moreover, Defendants have attached an affidavit to their motion explaining that the alleged misrepresentations giving rise to this complaint were made at a meeting held in Virginia. (Paper 8, Ex. 1, Zeinfeld Decl., ¶ 2). Plaintiff has stated its claim with sufficient particularity such that Defendants have notice of the claim against them. *See Harrison*, 176 F.3d at 784 ("[T]he rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.").

7

**B.  Failure to State A Claim**

Defendants point out the obvious – that Plaintiff contracted with InPhonic and not themselves, and argue from that premise that (1) Plaintiff's fraud claim is barred by the economic loss rule; (2) Plaintiff was never in privity with Defendants, and thus Defendants cannot be held personally liable for the alleged actions of their employer, InPhonic; and (3) InPhonic's bankruptcy proceedings preclude Plaintiff from asserting any claim against Defendants.

**1.  Economic Loss Rule**

At the outset, the parties disagree over whether the economic loss rule under Virginia or Maryland law applies to this case. Defendants contend that the economic loss rule under Virginia law applies because the law of the forum where the misrepresentation took place governs, and the alleged misrepresentation that gave rise to this suit occurred in Virginia.  Plaintiff argues that the misrepresentations giving rise to this complaint were repeated by telephone while Plaintiff was in Maryland.  However, Plaintiff argues that a choice of law analysis is irrelevant because the economic loss rule is the same under Maryland and Virginia law.

In a federal diversity case, like here, the court must apply the choice of law rules of the forum state, which is Maryland.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).  Absent a choice-of-law provision in the contract, "Maryland applies the law of the jurisdiction where the contract was made to matters

8

regarding the validity and interpretation of contract provisions, and a contract is made where the last act necessary to make the contract binding occurs." *Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002)(internal citations omitted). Here, the last act that made the contract binding occurred in Virginia, where Defendants requested Mr. Greene to procure 10,000 mobile telephones and Plaintiff agreed to deliver the inventory within a week. Therefore, the economic loss rule under Virginia law applies to this case. However, as stated by Plaintiff, the law is the same in both Maryland and Virginia.

"[T]he economic loss rule is intended to preserve the bedrock principle that contract damages be limited to those 'within the contemplation and control of the parties in framing their agreement.'" *City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990). The rule prevents a plaintiff from "pasting an ill-suited tort label on a set of facts that supports nothing more than a breach of contract claim." *Id*. However, the rule is not intended to bar claims that are genuinely based in tort.

> The rule's purpose is therefore not implicated where close inspection of the plaintiff's case reveals a genuine foundation for a tort claim. In such situations, there is no risk that a plaintiff will be pursuing a tort remedy when in fact he should be confined to a contract remedy. Thus if, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply.

*Id*. Defendants insist that the economic loss rule bars Plaintiff's claim because Plaintiff seeks tort damages flowing from an alleged breach of contract. Plaintiff counters that the economic loss rule does not bar fraudulent inducement claims because such claims are distinct from a breach of contract action.

The circumstances in this case are similar to the situation in *Madison Mgmt. Group*, where the Fourth Circuit held that the economic loss rule did not bar the plaintiff's fraud claim. The City of Richmond awarded Marbro Company a contract to construct a water transmission main. Interpace Corporation, a manufacturer of concrete pipe, agreed to supply the pipe to Marbro for the project, but the pipe was later determined to be defective. The City subsequently sued Marbro as well as Interpace's successors in interest for breach of contract and fraud. The trial court found that Interpace had committed fraud. On appeal, Interpace's successors argued that the economic loss rule barred the City's fraud claim. The Fourth Circuit disagreed, focusing its analysis on whether Interpace knew that it was making a false statement at the time it entered into the contract:

> Virginia law "distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract." *Lissmann* [*v. Hartford Fire Ins. Co.*], 848 F.2d 50 (4th Cir. 1988)] at 53; *cf. Kamlar* [*Corp. v. Haley*], 224 Va. [699 (1983)] at 707, 299 S.E.2d at 518 (allowing punitive damages in contract context where there is "proof of an independent, wilful tort, beyond

> the mere breach of a duty imposed by
> contract"). Here, the City does not allege
> mere failure to keep a promise. Instead, it
> alleges that Interpace knew, at the time it
> promised to supply conforming pipe, that it
> would not supply conforming pipe. Thus,
> contrary to the Pipe Defendants' assertion, it
> is not the case that "[t]he City's allegations
> of fraud constitute nothing more than a
> thinly-veiled recasting of its claim for
> breach of contract as a tort.". . .
> Accordingly, the Pipe Defendants are not
> entitled to the protection of the economic
> loss rule, which protects only those
> defendants who have breached only contractual
> duties.

*Id.* at 447. As in *Madison Mgmt. Group*, Plaintiff here alleges that Defendants knew at the time that they asked Plaintiff to procure 10,0000 mobile telephones that they never intended to pay for the inventory.

Defendants rely heavily on *A.T. Massey Coal Co., Inc. v. Rudimex GMBH*, No. 3:05CV190-JRS, 2006 WL 44278 (E.D. Va. Jan. 9, 2006), in support of their assertion that Plaintiff's fraud claim is barred by the economic loss rule. In *A. T. Massey*, the court held that the damages that the plaintiff sought from the alleged fraud could not be isolated from the damages sought under the plaintiff's breach of contract clam, and were therefore not recoverable under the economic loss rule. *A.T. Massey* is an unreported trial court opinion and is thus of limited relevance, particularly in light of the Fourth Circuit's holding in *Madison* that the economic loss rule does not apply to claims of fraudulent inducement. The facts are different as to when the alleged

11

fraudulent representation took place and in that the claims against the individual defendant were dismissed for lack of personal jurisdiction.  The economic loss rule does not bar a fraud claim where, as here, the plaintiff alleges that the  defendant did not intend to honor the contract at the time the contract was made. *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir. 1988).

### 2.  Privity

Defendants also argue that Plaintiff should not be allowed to amend to assert a breach of contract claim because InPhonic, which is in bankruptcy, cannot be joined in this action.  In addition, Defendants contend that they cannot be held personally liable for their employer's alleged breach of the contract because they were never in privity with Plaintiff, as Plaintiff entered into a contract with InPhonic.  Defendants assert that it is axiomatic that a plaintiff suing for breach of contract must be in contractual privity with the defendant it is suing for breach. Plaintiff properly points out that it is not attempting to bring a breach of contract claim against either InPhonic or Defendants. Moreover, Plaintiff maintains that privity of contract is not required to sustain a claim for fraudulent inducement.  Plaintiff is correct.  In *Nat'l Bank of Savannah v. Kershaw Oil Mill*, 202 F.90 (4th Cir. 1912), the Fourth Circuit held that privity of contract was not required in the context of a fraud action.  The *Kershaw Oil* court reasoned:

> It should be borne in mind that we are dealing
> with the law of fraud, and not with an action
> on a contract for breach of warranty or for
> simple negligence.  If this were an action for
> breach of warranty or for simple negligence,
> the term 'privity' would be applicable, and in
> order to enable the plaintiff to recover it
> would have to be shown that there was a breach
> of contract duty owing to the plaintiff, as
> was stated in the case of *Savings Bank v.
> Ward*, 100 U.S. 195, 25 L.Ed. 621, wherein the
> court, among other things, said:
>
> > . . . Where there is fraud or
> > collusion, the party will be held
> > liable, even though there is no
> > privity of contract; but where there
> > is neither fraud or collusion nor
> > privity of contract, the party will
> > not be held liable, unless the act
> > is one imminently dangerous to the
> > lives of others, or is an act
> > performed in pursuance of some legal
> > duty.

*Id.* at 96.  Other courts have also held that privity is not a requirement for bringing a fraudulent inducement claim.  *See, e.g., Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 767 (Tex. 2007); *Haberman v. Washington Pub. Power Supply Sys.*, 744 P.2d 1032, 1070 (Wash. 1987).  Thus, the cases cited by Defendants, such as *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Assoc.*, 219 Va. 1001, 1003 (Va. 1979), dealing with breach of contract actions are irrelevant.  Defendants also cite to an unreported case, *SettlementRoom L.C. v. Certified Env'ts, Inc.*, No. C192478, 2005 WL 832215 (Va. Cir. Ct. Feb. 14, 2005), to support their argument that, under Virginia law, corporate officers are not responsible for the contractual debts of a corporation where they

13

enter into a contract on the corporation's behalf. Defendants fail to mention that under Virginia law, courts can pierce the corporate veil and hold the officers of a corporation personally liable in certain circumstances. The Virginia Supreme Court has held that piercing the corporate veil is justified where the "shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 115 (Va. 1993).

### 3. **Significance of InPhonic's Bankruptcy Proceedings**

Finally, Defendants contend that the bankruptcy proceedings bar Plaintiff's claims for two reasons. First, Defendants point out that Plaintiff was listed as having a disputed claim in the bankruptcy proceeding in the amount of $0.00. (Paper 8, Ex. 3, Excerpts of Summary of Schedules). Defendants argue that if Plaintiff wanted to contest the amount of the claim, Plaintiff was required to file a proof of claim before March 21, 2008, the claims bar date set by the Bankruptcy Court. (*Id.*, Ex. 2, Bankruptcy Order). Second, Defendants contend that the release provision in the "Second Amended Joint Plan of Liquidation of SN Liquidation, Inc., et al. Proposed by the Debtors in Possession and the Official Committee of Unsecured Creditors" ("the Bankruptcy Plan") extinguished all claims against Defendants. Plaintiff counters that InPhonic's bankruptcy proceedings have no bearing on Plaintiff's ability to pursue its fraud claim against Defendants.

14

a.  **Bankruptcy Order**

On January 30, 2008, United States Bankruptcy Judge Kenneth Gross issued an amended order setting March 21, 2008 as the deadline for all entities to file a proof of claim against InPhonic.  The order went on to explain that any entity that failed to file a proof of claim by the deadline was forever barred from doing so:

> ORDERED, that any Entity that fails to file a proof of claim on account of a General Claim by the applicable Bar Date described in this Notice shall be forever barred, estopped and enjoined from (a) asserting any General Claim against the Debtors that is not identified in the Schedules on behalf of such entity as liquidated, undisputed and non-contingent; or (b) asserting any General Claim against the Debtors that is identified in the Schedules on behalf of such entity as unliquidated, disputed or contingent; or (c) asserting any General Claim against the Debtors that is of a different amount, nature or classification than any General Claim identified in the Schedules on behalf of such entity . . .

(Paper 8, Ex. 2, Bankruptcy Order, at 2-3).[1]  Plaintiff concedes that it did not file a proof of claim by March 21, 2008.  However, Plaintiff points out that its failure to file a proof of claim or otherwise participate in the InPhonic bankruptcy case only precludes Plaintiff from seeking recovery against InPhonic, *not*

---

[1]  This court is entitled to take judicial notice of the records of the bankruptcy court.  "[T]he Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 (4th Cir. 1990).

*Defendants*.  Plaintiff is correct.  "[T]he discharge in bankruptcy, along with the coextensive permanent injunction and fresh start, are exclusive to the debtor, and do not otherwise affect the enforcement of any underlying debt, or any nondebtor liability thereon."  *In Re Jason Pharm.*, 224 B.R. 315, 321 (Bankr. D.Md. 1998); *see also Chapman v. Bitminous Ins. Co.*, 345 F.3d 338, 342-43 (5th Cir. 2003)(holding that the failure to file a proof of claim against debtor in bankruptcy did not bar the creditor from pursuing claims against non-debtor parties, as bankruptcy laws provide only for discharge of debtor's debts).  Therefore, the fact that Plaintiff did not file a proof of claim against InPhonic does not affect Plaintiff's fraud claim against Defendants.

**b.  Release Provision**

Defendants also contend that the release provision in the Bankruptcy Plan extinguishes all claims against Defendants.  The release provision states, in relevant part:

> Article XI.C.2 of the Plan provides for the third party releases of "Adeptio and Simplexity, including their respective present members, officers, directors, employees, advisors" . . . by "any Holder of a Secured Lender Claim or a General Unsecured Claim . . . " that does not opt out of such release by a timely written election set forth on such Holder's Ballot of "any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part

16

upon any act or omission, transaction, or
other occurrence or circumstances existing or
taking place prior to or on the Effective Date
arising from or related in any way whatsoever
to the Debtors and these Chapter 11 Cases,
including, but not limited to, those in any
way related to formulating, negotiating,
preparing, disseminating, implementing,
administering, confirming, or consummating the
Sale, [the] Plan, the Disclosure Statement,
the Litigation Trust Agreement, or any other
contract, instrument, release, or other
agreement or document created or entered into
in connection with these Chapter 11 Cases or
the Plan, or any other postpetition act taken
or omitted to be taken in connection with or
in contemplation of the liquidation of the
Debtors, except for their gross negligence,
willful misconduct or bad faith."

(Paper 8, Ex. 4, Bankruptcy Plan, at 12-13). "A release is the

contractual abandonment of a claim or right to the person against

whom the claim exists, or against whom the right could be

enforced." *Auslander v. Helfand*, 988 F.Supp. 576, 580 (D.Md.

1997)(internal citation omitted). Courts interpret releases

according to principles of contract interpretation. *Id*. Where the

language of the release is clear and unambiguous, "the words of the

release will be afforded their plain and ordinary meaning, and no

further interpretation, including parol or extrinsic evidence, is

permitted." *Id*.

An affirmative defense, such as release, is not ordinarily

considered on a motion to dismiss because the plaintiff is not

required to negate it in its complaint. The purpose of a motion to

dismiss under Rule 12(b)(6) is to "test the legal adequacy of the

complaint, and not to address the merits of any affirmative

17

defenses." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). "A court may consider defenses on a 12(b)(6) motion only 'when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.'" *E. Shore Markets, Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 348-49 (2d ed. 1990). Here, the complaint makes a passing reference to InPhonic's bankruptcy proceedings, but does not specifically discuss the release provision at all. Because the face of the complaint does not reveal the existence of a release defense, the court will not consider it as part of Defendants' motion to dismiss.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be denied. A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

18